TELITHA DEAN KARREN, Respondent and Appellant, v. FRED W. KARREN, Appellant and Respondent.

### No. 1367. (69 Pac. 465.)

**2. Divorce: Collusion: Vacation of Decree.**

Where a husband represented to his wife that his father would deed him certain land if he would divorce the wife, and to enable him to secure the land she made no defense to a suit for divorce, it being understood that the husband would remarry her, she could not have a vacation of the divorce decree, especially where the husband had married again.

**3. Changes in Decree: When to be Granted.**

Revised Statutes, section 1212, provides that subsequent changes may be made in a decree for divorce in respect to the disposal of the children or the distribution of the property. *Held*, that such changes can only be granted in the action in which the divorce decree was granted.

Karren v. Karren.

1. **Findings of Fact: Insufficient to Sustain Decree: Reversal.**

    The findings of fact must support the judgment, and when it affirmatively appears that they fail to do so, the judgment will be reversed on appeal.[1]

(Decided July 5, 1902.)

Appeal from the First District Court, Cache County.—*Hon. Charles H. Hart,* Judge.

Action to set aside a decree of divorce obtained by the defendant from the plaintiff. From a decree sustaining in part and setting aside in part the said decree, both parties appealed.

REVERSED AND DISMISSED.

*George Q. Rich, Esq.,* and *J. Z. Stewart, Jr., Esq.,* for appellant Fred W. Karren.

The plaintiff asks a court of equity to relieve her from the position in which she finds herself because the appellant did not carry out his alleged promises. If such had been the intention of F. W. Karren she was in equal guilt with him because according to her complaint it was in sole reliance upon these representations and to enable him to procure the deed by those means that she "neglected and failed to appear." For authorities bearing upon the law that no relief will be granted in such cases see: 5 Am. and Eng. Ency. of Law (1 Ed.), p. 845; Blank v. Nohl (Mo. Sup.), 19 S. W. 65; 3 Am. and Eng. Ency. of Law (1 Ed.), p. 379; 1 Pom. Eq. Jur. (2 Ed.), sec. 401; Webster v. Webster, 6 N. W. 170.

---

[1] Maynard v. Ass'n, 14 Utah 458, 47 Pac. 1030; Walley v. Bank, 14 Utah 305, 47 Pac. 147.

*H. H. Henderson, Esq.,* for appellant Fred W. Karren.

Under section 1212 of the Revised Statutes of Utah, relating to divorce, the court has jurisdiction at all times in the original case to change its decree as far as it relates to ailmony and the care and custody of the children. So far as that part of the case is concerned the court never lost jurisdiction to act. "Where a party to an equitable action has a plain and speedy remedy by motion in the action, he can not maintain a separate suit in equity to obtain the desired release." Ketchum v. Crippen, 37 Cal. 223; Ede v. Hazen, 61 Cal. 360; Park v. Highbee, 6 Utah 414; Parrish v. Parrish, 9 Ohio St. 367; Greene v. Greene, 2 Gray 361-367; 2 Bishop on M. and D., sec 1556.

*N. Tanner, Jr., Esq.,* and *James N. Kimball, Esq.,* for appellant Telitha Dean Karren.

The decree of divorce should be set aside in its entirety, because it appears from the findings that it was procured by default, which default was caused, and the respondent prevented from presenting a good and sufficient defense, by reason of appellant's misrepresentations to her; that it was also obtained upon testimony knowingly false, thus constituting a fraud upon the respondent, a fraud upon the court, and a crime against the laws of the State. 2 Bish., Mar. and Div., 744, 753 et seq.; Whitcome v. Whitcome, 46 Iowa 437; Rush v. Rush, Id. 648; Johnson v. Coleman, 23 Wis. 452; Freeman on Judgments, 99, 100, 250, 489, 491. Under the law, a divorce will not be granted the complaining party where the cause alleged for the divoree has been condoned, and certainly in this case no divorce would have been granted, had the defense of condonation been made, as is plainly indicated by finding of facts. 2 Bishop on Mar. and Div., 34.

BASKIN, J.—The material allegations of the complaint are as follows: "That heretofore, to-wit, on the seventeenth day of September, 1900, in this [First district] court, a decree and judgment was entered in an action wherein said defendant was plaintiff, and this plaintiff was defendant, in terms dissolving the bonds of matrimony between this plaintiff and said defendant, and awarding said defendant the three children, issue of the marriage between plaintiff and defendant, viz.: . . . And plaintiff further alleges that the summons in said action was never served upon her, and that she had no legal knowledge of the pendency of said action; that said judgment was rendered against her by default, and upon a complaint" which charged her (the defendant) with having been guilty of adultery. "And that, after the commission of the adultery complained of in the complaint (in said action for divorce), the said defendant forgave her, and lived with and cohabited with her as his wife, and so lived and cohabited with her during the pendency of the action aforesaid, and thereafter left her in possession and custody of their home and children while he went to fill a mission in the Southern states. And she further alleges that the said defendant represented to her and told her that he was procuring said divorce because of the insistence of his parents, and that after said divorce was procured he would remarry her, and provide for her as he had hitherto done, and under no circumstances deprive her of the custody of the said children, or of the homestead on which they then resided. That, at the time of the bringing of said suit, the title to said homestead was in the father of said defendant, and he, the said father, refused to make a deed to the said defendant of said homestead unless he would procure a divorce from this plaintiff. That, relying upon said representations of said defendant, and to enable him to procure the said deed to said homestead, she neglected and failed to appear and defend said action for divorce. That, notwithstanding said representa-

Karren v. Karren.

tions, the said defendant falsely and knowingly testified in court that he had not forgiven this plaintiff for her adultery, and falsely and knowingly obtained a decree awarding the custody of the said children to him, and falsely and knowingly testified in court that he had not lived or cohabited with this plaintiff after having knowledge of said adultery, and forcibly, and against her consent, took from her, her children, and turned her out of her home, and left her without the means of support. That she is in indigent circumstances, and has no property or means with which to support herself or to pay the expenses of this action. That the defendant is a man of means amply able to pay the expenses of this action, and to support this plaintiff."

The prayer of the complaint was that the decree of divorce be set aside; that the custody of the children be awarded to the plaintiff; and that alimony and certain sums of money for attorney's fees and her support during the pendency of the action be awarded to her. The representations and false testimony of the defendant set out in the complaint, and the allegation in respect to the service of the summons in the divorce suit, were denied by the answer. In the third finding of fact, the trial court found that the summons in the said divorce suit was duly served on the defendant in said action on the thirtieth day of July, 1900. Except in respect to the allegation relating to said summons, and the finding that the defendant herein, since the said decree of divorce, remarried on the third day of October, 1901, the other findings of fact are, in substance, the same as the aforesaid material allegations of the complaint. As conclusions of law from the findings of fact, the trial court found: "(1) That the plaintiff is not entitled to have the decree of divorce entered on the said seventeenth day of September, 1900, set aside, so far as it dissolves the bonds of matrimony between her and defendant. (2) That she is not entitled to recover attorney's fees or suit money in this action. (3)

That the plaintiff herein is entitled to have the said decree, so far as it awards the custody of the children aforesaid to the said defendant, opened up and set aside, and is entitled to be allowed to answer in said divorce suit, setting up her rights, if any she has, to the said children, and for alimony and a division of the defendant's property. (4) That the plaintiff is entitled to have judgment, against the defendant, for her costs in this action." A decree in accordance therewith was made and entered. From this decree, both parties have taken an appeal.

The plaintiff contends that under the findings of fact she is entitled to a decree setting aside the decree of divorce, and the defendant contends that under the findings of fact the plaintiff is not entitled to any relief whatever. The findings of fact must support the judgment (8 Enc. Pl. and Prac., 943); and when it affirmatively appears that they fail to do so the judgment will be reversed on appeal. Maynard v. Association, 14 Utah 458, 47 Pac. 1030; Walley v. Bank, 14 Utah 305, 47 Pac. 147.

From the findings, and the plaintiff's allegations that she, "relying upon the said representations of the defendant, and to enable him to procure a deed to said homestead, neglected and failed to appear and defend said action for divorce," it is clear that she freely consented to the institution of the divorce suit, and that the decree of divorce was obtained by the collusive agreement of the parties. The plaintiff, when she gave her consent, must have known that the contemplated divorce could only be procured by a suppression of the facts and false testimony. It does not appear that she made any objections to the proceedings until after the defendant, more than one year after the divorce, had remarried. This suit was instituted thirteen months after the divorce. While a decree of divorce obtained by collusion of the parties, or by the suppression of the facts, or false testimony, is a fraud upon the court, and against public policy, it would be

more against public policy to disturb the decree at the instance of either of the parties who are *in pari delicto,* when, after the divorce, as in this case, one of the parties has remarried. "After a decree of divorce is rendered other marriages may be contracted and children born, and it is against public policy to vacate the decree, as such an order would render innocent parties guilty of bigamy, and their children illegitimate. Accordingly, the courts have sometimes refused to vacate decrees of divorce." 7 Enc. Pl. and Prac., p. 138. But when the vacation of a decree of divorce, obtained by collusion, is sought by a willing participant in the fraud, the court, on the principle of the maxim, *"Ex dolo malo non oritur actio,"* will refuse to disturb the decree, especially when the opposing party has remarried, and children have sprung from the second union. 2 Nels. Div. and Sep., sec. 1055; 2 Bish., Mar. and Div., sec. 1548; Hubbard v. Hubbard, 19 Colo. 13, 34 Pac. 170; Simons v. Simons, 47 Mich. 253, 645, 10 N. W. 360; Orth v. Orth, 69 Mich. 158, 37 N. W. 67; Yorston v. Yorston, 32 N. J. Eq. 495; Nichols v. Nichols, 25 N. J. Eq. 60; Greene v. Greene, 2 Gray 361, 61 Am. Dec. 454. In the latter case SHAW, C. J., said: "In using the term 'collusion' in the present case, we presume the libelant does not mean to use it in its ordinary sense, as collusion between the parties to the former proceeding (on divorce), and so a fraud upon the law, because that would include herself as party to the fraud. As said by WILLES, C. J., in Prudam v. Phillips, reported in a note to Hargrave's Law Tracts, 456, 'if both parties colluded in the cheat upon the court, it was never known that either of them could vacate the judgment.'" In the case of Hubbard v. Hubbard, 19 Colo. 13, 34 Pac. 170, the wife, who was the defendant in the divorce suit, after service on her of the summons, was induced to abstain from interposing any defense by the promise of her husband to pay to her, as soon as the decree of divorce was signed, $3,000, and to have certain lots in Denver deeded to her. Upon the

failure of the husband to keep his promise, the wife filed a petition, in which she set out the promise of her husband, and alleged that it was made by the plaintiff for the purpose of inducing her to abstain from offering any evidence or making any defense to the action, and without any intention of performing the same. The petition was demurred to on the following grounds: "(1) That the petition does not state facts sufficient to entitle the defendant to maintain the same. (2) That it appears by the petition that the same is brought and presented by the defendant to set aside a decree of court obtained by consent, and in pursuance of a fraudulent and collusive purpose participated in by the defendant to deceive and defraud the court. (3) That it appears by the said petition that the same is presented for the purpose of enabling petitioner to take advantage of a certain corrupt, collusive, and illegal agreement therein set up." In the opinion of the court, sustaining the demurrer, HAYT, C. J., said: "It is apparent upon the face of the petition that plaintiff in error was in no way misled or deceived as to the nature of the original action. She was duly served with process of summons and a copy of the complaint, and had at her service able counsel to defend her interests. Thus advised and prepared, she entered into a secret, collusive agreement with defendant in error, and for a promised consideration aided him by her silence to impose upon the court and procure a divorce. After the entry of the decree thus obtained, she remained silent for more than one year, and only upon failure to realize the consideration promised for her shameless bargain did she apply for relief." In 2 Bish., Mar. and Div., section 1548, the doctrine is clearly stated as follows: "Mutual fraud, of which the common instance is collusion, and which is available to third persons in interest, as we shall see in the next subtitle, can not be brought forward by either of the parties against the other as ground for reversing any step in the cause, or vacating

the sentence. This doctrine is an inevitable result from the universal rule of our law that one in a court of justice can not complain of his own wrong, or of another's wrong whereof he was a partaker. It would be a special novelty for a plaintiff to address the tribunal with, 'The defendant and I have been playing a trick on this court, but I discover he has got the better of me, so please turn the tables on him.'" Also, in Broom, Leg. Max., 711, thus: "No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." In the opinion delivered by Mr. Justice Miner, in the case of Short v. Mining Co., 20 Utah 20, 30, 57 Pac. 720, 722, 45 L. R. A. 603, it was said: "If the plaintiff requires any aid from the illegal transaction in order to enable him to sue his claim, he can not enforce it. Where a contract grows immediately out of and is connected with an illegal or immoral act, it will not be enforced. The test to determine whether the action arises *ex stirpe causa*, is the plaintiff's ability to establish his case without any aid from the illegal transactions. If his cause or right to recover depends upon a transaction which is *malum in se*, or prohibited by law, and which he must prove, in order to make out his case, he can not recover." Since the remarriage of the defendant his second wife has not borne any children, but it is conceded by counsel that she is enceinte.

Section 1212, Revised Statutes, provides that subsequent changes may be made in a decree of divorce, by the court, in respect to the disposal of the children or the distribution of property. Such changes must be applied for, and can only be granted, in the action in which the decree of divorce was granted. We think it is clear, both from the allegations of the complaint and the findings of fact, that the plaintiff is not entitled to any relief in this action.

The judgment of the lower court is reversed, with costs, and the action dismissed.

MINER, C. J., concurs. BARTCH, J., concurs in result.