# MARIE HERZOG HENDERSON v. FRANK W. HENDERSON.

### (156 N. W. 245.)

**Husband and wife — agreement between for wife to obtain divorce — criminal action pending against husband — wife enabled to testify — agreement to remarry — agreement breached by husband — marries another woman — collusive divorce — order to show cause why divorce should not be set aside — motion to quash order — relief — divorce — consent to — validity — failure of husband to keep agreement — showing of — insufficient.**

Plaintiff, the wife, agreed with her husband that she should obtain a divorce in the mistaken belief that this was necessary to enable her to testify for

her husband in a criminal action wherein he was charged with embezzlement. It was further agreed that, after the termination of this action and other criminal proceedings, that the husband should remarry her. In accordance with this agreement the wife deceived her attorneys and the trial judge, and obtained a divorce. The husband, however, married another woman, and the wife secured from the same trial judge an order to show cause why the decree of divorce should not be set aside as collusive. The said order was served personally upon defendant outside of the state of North Dakota. Whether such service is sufficient to confer jurisdiction is not decided.

A motion to quash the proceedings should have been allowed. Plaintiff's own testimony shows that she was not entitled to any relief. Having consented to the decree in order to aid her husband, she cannot question its validity by merely showing that the husband has failed to keep his agreement to remarry her, especially after the husband has married another woman.

Opinion filed January 10, 1916.

Appeal from the District Court of Stutsman County, *Coffey,* J. Reversed.

*Wolfe & Schneller,* for appellant.

"Objection to the illegality of the service is considered as abandoned only when the party pleads to the merits in the first instance, without insisting upon the illegality." Motion to quash the order of the court to show cause, specifying and preserving all objections, was the proper practice. Harkness v. Hyde, 98 U. S. 476, 25 L. ed. 237.

On such a motion the court is bound to assume the truth of each fact established by the evidence upon which the decree of divorce was granted, where no fact is challenged. Graves v. Graves, 10 L.R.A. (N.S.) 216, and notes, 132 Iowa, 199, 109 N. W. 707, 10 Ann. Cas. 1104; Greene v. Greene, 2 Gray, 361, 61 Am. Dec. 454; Pico v. Cohn, 91 Cal. 129, 13 L.R.A. 336, 25 Am. St. Rep. 159, 25 Pac. 970, 27 Pac. 537; United States v. Throckmorton, 98 U. S. 63, 25 L. ed. 94; Steele v. Culver (South Haven & E. R. Co. v. Culver) 157 Mich. 344, 23 L.R.A.(N.S.) 564, 122 N. W. 95.

The representation which may form the basis of statutory collusion must be a misrepresentation. There was no collusion in this case because both charges laid against defendant were true, so far as the record shows, and this record is binding on both parties. Wiemer v. Wiemer,

21 N. D. 372, 130 N. W. 1015; Rev. Codes 1905, § 4058, Comp. Laws 1913, § 4389.

There being no legal collusion, there could be no fraud prepetrated on the court, as every representation made to and in the court was a true one. "Where there is a failure to state a material fact, there is a presumption against the pleader that it does not exist." Maxwell, Code Pl. p. 16 and cases cited; Nation v. Cameron, 2 Dak. 347, 11 N. W. 525; State v. Stewart, 9 N. D. 409, 83 N. W. 869.

Where a wife consents to a divorce against her, in reliance on the promise of the husband to remarry her and to enable him to procure a deed of their homestead, from her father, who refused to convey it so long as she was his wife. After her husband has married another woman she cannot have the decree annulled. Karren v. Karren, 25 Utah, 87, 60 L.R.A. 294, 95 Am. St. Rep. 815, 69 Pac. 465.

Where a party has invoked the jurisdiction of the court, in all equity and good conscience, he should not be permitted to attack a decree which his own acts induced the court to grant. Lacey v. Lacey, 38 Misc. 196, 77 N. Y. Supp. 235.

Where a party depends upon a transaction which is evil in itself or prohibited by law, and which he must prove in order to make out his own case, he cannot recover. Short v. Bullion-Beck & C. Min. Co. 20 Utah, 20, 45 L.R.A. 603, 57 Pac. 720; Kinnier v. Kinnier, 45 N. Y. 535, 6 Am. Rep. 132; Simons v. Simons, 47 Mich. 253, 10 N. W. 360.

Where a party is entitled to a decree of divorce, the fact that it was brought about by fraud and collusion is no ground for setting it aside. Harft v. Harft, 16 N. Y. Week. Dig. 461.

A certified copy of a court record of a foreign court, by one who claims to be clerk of said court, without further authentication, is wholly incompetent. U. S. Rev. Stat. § 905, Comp. Stat. 1913, § 1519; Rev. Codes 1913, § 7911; Goss v. Herman, 20 N. D. 295, 127 N. W. 78.

*M. A. Hildreth,* for respondent.

The judgment and decree of divorce is subject to attack by either party, either by motion, by action, or by appeal. Yorke v. Yorke, 3 N. D. 343, 55 N. W. 1095; Nichells v. Nichells, 5 N. D. 125, 33 L.R.A. 515, 57 Am. St. Rep. 540, 64 N. W. 73; Garr, S. & Co. v. Spaulding, 2 N. D. 414, 51 N. W. 867; Simpkins v. Simpkins, 14 Mont. 386,

43 Am. St. Rep. 641, 36 Pac. 759; Cottrell v. Cottrell, 83 Cal. 457, 23 Pac. 531; Bell v. Peck, 104 Cal. 135, 37 Pac. 766; McBlain v. McBlain, 77 Cal. 507, 20 Pac. 61.

A motion to vacate a judgment is the settled procedure in this state. Freeman v. Wood, 11 N. D. 2, 88 N. W. 721; Kitzman v. Minnesota Thresher Mfg. Co. 10 N. D. 26, 84 N. W. 585; Kenney v. Fargo, 14 N. D. 419, 105 N. W. 92; Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581; Cline v. Duffy, 20 N. D. 526, 129 N. W. 75; Williams v. Fairmount School Dist. 21 N. D. 120, 129 N. W. 1027.

Courts possess the inherent power to vacate and set aside collusive and fraudulent judgments, notwithstanding more than one year has elapsed after entry. 23 Cyc. 907; Whittaker v. Warren, 14 S. D. 611, 86 N. W. 638; Freeman v. Wood, 11 N. D. 1, 88 N. W. 721; Yorke v. Yorke, 3 N. D. 343, 55 N. W. 1095; Balch v. Beach, 119 Wis. 77, 95 N. W. 132.

The defendant was a nonresident, and he was only entitled to notice through the office of the clerk of court. That he had actual notice appears from the record. Johnson v. Coleman, 23 Wis. 452, 99 Am. Dec. 193; Weatherbee v. Weatherbee, 20 Wis. 499; Crouch v. Crouch, 30 Wis. 667; Boyd's Appeal, 38 Pa. 241; Singer v. Singer, 41 Barb. 139; True v. True, 6 Minn. 458, Gil. 315; State v. Whitcomb, 52 Iowa, 85, 35 Am. Rep. 258, 2 N. W. 970; Holmes v. Holmes, 63 Me. 420; Binsse v. Barker, 13 N. J. L. 263, 23 Am. Dec. 720; Adams v. Adams, 51 N. H. 388, 12 Am. Rep. 134; Earle v. Earle, 91 Ind. 27; Brown v. Grove, 116 Ind. 84, 9 Am. St. Rep. 823, 18 N. E. 387; Wisdom v. Wisdom, 24 Neb. 551, 8 Am. St. Rep. 215, 39 N. W. 594; Olmstead v. Olmstead, 41 Minn. 297, 43 N. W. 67; Stephens v. Stephens, 62 Tex. 337; Britton v. Britton, 45 N. J. Eq. 88, 15 Atl. 266; Bryant v. Austin, 36 La. Ann. 808; McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357; Everett v. Everett, 60 Wis. 200, 18 N. W. 637; Firmin v. Firmin, 16 Phila. 75; Bomsta v. Johnson, 38 Minn. 230, 36 N. W. 341; Caswell v. Caswell, 120 Ill. 377, 11 N. E. 342, 24 Ill. App. 548; Gechter v. Gechter, 51 Md. 187; Fidelity Ins. Co.'s Appeal, 93 Pa. 242; Edson v. Edson, 108 Mass. 590, 11 Am. Rep. 393.

It is settled law that courts have inherent power to set aside or revise their judgments and decrees, where they have been obtained by fraud upon one party and imposition upon the court. Parker v. Dee,

3 Swanst. 529; Kemp v. Squire, 1 Ves. Sr. 205; Roach v. Garvan, 1 Ves. Sr. 157; Stevens v. Guppy, Turn & R. 178; Richmond v. Tayleur, 1 P. Wms. 736; Lloyd v. Mansell, 2 P. Wms. 73; Shelford, Marr. & Div. 475; Conway v. Beazley, 3 Hagg. Eccl. Rep. 639, 642; Prudham v. Phillips, 2 Ambl. 763, 20 How. St. Tr. 479, note; Jackson v. Jackson, 1 Johns. 424; Dunn v. Dunn, 4 Paige, 425; Story, Confl. L. § 547; 2 Kent, Com. 11th ed. 109; Re Henderson, 27 N. D. 160, 51 L.R.A. (N.S.) 328, 145 N. W. 574.

And marriage with an innocent party will not defeat this proceeding. Caswell v. Caswell, 24 Ill. App. 548; Everett v. Everett, 60 Wis. 200, 18 N. W. 637; Stephens v. Stephens, 62 Tex. 337.

Where the petitioner is not free from blame, the court may refuse a divorce even though the evidence discloses statutory grounds for divorce, since public policy favors the continuity of the marriage relation. Lyon v. Lyon, 39 Okla. 111, 134 Pac. 650.

A promise to marry conditioned on obtaining a divorce is void as against public policy. Halls v. Cartwright, 18 La. Ann. 414; Wass v. Wass, 41 W. Va. 126, 23 S. E. 537; 1 Bishop, Marr. & Div. 193; Noice v. Brown, 38 N. J. L. 228, 20 Am. Rep. 388.

"The state is interested in divorce proceedings, being concerned with the preservation of the marriage." Rehfuss v. Rehfuss, 169 Cal. 86, 145 Pac. 1020.

In some jurisdictions the statute provides that if no defense is interposed in a divorce suit, the state shall, by some officer intervene and defend. This rule rests on the inconvenience which would result to the collateral rights of third parties. Parish v. Parish, 9 Ohio St. 534, 75 Am. Dec. 482; Holmes v. Holmes, 63 Me. 420; Johnson v. Coleman, 23 Wis. 452, 99 Am. Dec. 193; Drexel's Appeal, 6 Pa. 272; Shallcross v. Deats, 43 N. J. L. 177; Tyler v. Aspinwall, 73 Conn. 493, 54 L.R.A. 758, 47 Atl. 755.

Upon proof of fraud in the procurement of a judgment, the party defrauded may have it vacated at any time. Cannan v. Reynolds, 5 El. & Bl. 301, 26 L. J. Q. B. N. S. 62, 1 Jur. N. S. 873; Allen v. Maclellan, 12 Pa. 328, 51 Am. Dec. 608.

The test is not whether the plaintiff had a just cause for divorce, but was the divorce procured under circumstances which were a fraud on the court and upon the other party. Senter v. Senter, 70 Cal. 624, 11

Pac. 782; Beard v. Beard, 65 Cal. 354, 4 Pac. 229; McBlain v. McBlain, 77 Cal. 509, 20 Pac. 61; Cottrell v. Cottrell, 83 Cal. 459, 23 Pac. 531; Hopkins v. Hopkins, 39 Wis. 170.

Only reasonable diligence under all the circumstances, as to the time of acting in such cases, is required. Plaintiff acted with such care and diligence in this case. Daniels v. Benedict, 50 Fed. 347; Yorke v. Yorke, 3 N. D. 351, 55 N. W. 1095.

BURKE, J. Plaintiff and defendant intermarried at St. Paul, Minnesota, in 1909. In January, 1914, plaintiff, the wife, applied to attorneys at Jamestown, North Dakota, to prosecute proceedings against her husband for divorce. The defendant was personally served with the summons and complaint at Wahpeton, North Dakota, on January 16, 1914, although he was at that time a resident of Minnesota. He made no further appearance in the action, and upon March 4, 1914, the wife appeared before the district court with due proof and obtained a decree of divorce upon the grounds of cruel and inhuman treatment and adultery with various and divers persons, unknown. The divorce allowed the wife alimony, suit money, and counsel fees, and also provided that either party might marry again after the expiration of three months. During the fourth month after the decree, defendant, the husband, married again, whereupon the wife made application to the trial court for an order to show cause why the decree of divorce should not be set aside. As a basis for this order she filed her affidavit to the effect that prior to the institution of the divorce proceedings her husband had represented to her that he had been married before and had not secured a divorce; that the former wife was making him trouble, and further represented to her that he had been arrested at Wahpeton, North Dakota, upon the charge of embezzlement; and that she, his wife, would not be allowed to testify upon his behalf. That for those two reasons he had requested her to obtain a divorce from him, so that he might avoid a possible charge of bigamy preferred by his first wife, and in order that she, plaintiff, might testify as a witness upon the trial wherein he was charged with embezzlement. She further alleged that he, her husband, represented to her that if she would secure the divorce and aid him in meeting the criminal charges aforesaid successfully, he would then remarry her. That it was in reliance upon said promises, and not

through any desire for a divorce, that the proceedings had been instituted wherein she had obtained the said divorce. She further alleged that pursuant to this agreement she had deceived her attorneys in Jamestown, North Dakota, as well as the trial court, and had represented to him that she desired such decree, when in truth and in fact she wished only to aid her husband in his trouble. That, notwithstanding the husband's promises to remarry her, he had married another woman, whom she has since learned and believes was an important witness for the state against her husband in the embezzlement case, and that the said marriage was undoubtedly brought about by her once-husband in order to prevent the said witness from testifying against him upon such trial.

Upon the strength of this showing the trial court issued an order to show cause why the divorce should not be annulled, and the same was personally served upon the defendant within the state of Minnesota, of which he was a resident. Upon the return day, defendant was represented by counsel, who, appearing especially, objected to the jurisdiction of the trial court over defendant's person and moved to vacate and set aside the service of the citation and order to show cause, upon the grounds that no legal service had been made upon the defendant, who was a resident of the state of Minnesota and served therein. Upon this being overruled, the defendant, reserving all of the defendant's rights, objections, and exceptions to the jurisdiction of the court as aforesaid, moved the court to quash the order upon the grounds that the same was improvidently issued, and that the facts shown therein were insufficient to warrant the court in granting the same. This was also denied, whereupon plaintiff offered herself as a witness, and the defendant objected to the taking of any proof upon all the grounds hereinbefore mentioned. This objection was overruled, and the plaintiff testified along the lines indicated by her affidavit. She was cross-examined by the defendant, who also introduced nine exhibits as evidence upon his own behalf. At the end of the testimony, defendant moved to strike out all the testimony offered, and renewed his motion to quash. These motions were denied, and the trial court entered an order setting aside, vacating, and canceling the decree of divorce. Defendant has appealed, urging the same objections made to the trial court. There seems to be no statutory authorization for such a service;

but in order to end this litigation we will base our decision upon the merits, and assume for the purposes of this opinion that it was before the court.

(1) The motion to quash should have been allowed. Taking the affidavit of the plaintiff as true, we find that at the time of the commencement of this action, she had good grounds for a divorce against her husband upon the grounds of adultery and probable desertion. She did not desire the divorce, however, for her own sake, but did desire it in order that she (as she supposed) might become a witness and testify in her husband's behalf in an action wherein he was charged with a crime. Whatever was her motive, she did really desire a divorce and obtained it. To be sure, she relied upon the promises of the husband to remarry her after his difficulties had been met, and it was not until she learned that the husband did not intend to keep his promises that she found any fault with the decree that had been entered against her. It is evident that she cannot, after the remarriage of her husband, reopen the judgment which she herself obtained. Two L.R.A. notes cover the grounds so thoroughly that we will do little more than refer to them. In Karren v. Karren, 25 Utah, 87, 95 Am. St. Rep. 815, 69 Pac. 465, 60 L.R.A. 294, it was held as follows: "A woman who consented to a decree of divorce against her to enable her husband to obtain a grant of property cannot, after her husband had married another woman, have the decree annulled, although in consideration of her consent he promised to remarry her after the grant was procured and the decree was obtained by suppression of facts and false testimony. (Paragraph 1 of syllabus.)"

Following this case in the L.R.A. citation is a fourteen-page note summarizing all of the cases up to the year 1902. We quote briefly from the note at page 307: "As a general rule the party obtaining a divorce decree will not be relieved therefrom upon his application to set it aside, upon the broad principle that, having induced the court to render the judgment, he is estopped from afterwards attacking it, except of course for fraud upon himself, mistake or surprise." In the case at bar, of course, plaintiff can claim neither surprise nor mistake, and the fraud practised upon her was not of the kind of which she could take advantage. Among the cases mentioned is Ficener v. Ficener, 8 Ky. L. Rep. 867, 3 S. W. 597, the court stating that the grounds

for setting aside ordinary judgments at law or in equity do not apply to judgments for divorce where the parties have remarried or otherwise changed their status. In Champion v. Woods, 79 Cal. 17, 12 Am. St. Rep. 126, 21 Pac. 534, relief was denied to a wife who had obtained a decree of divorce and had carelessly stated that there was no property when in fact there was such property in existence. In the case of Olmstead v. Olmstead, 41 Minn. 297, 43 N. W. 67, the rule is stated that the fraud practised upon the wife must be something substantial. In that case the husband secured her signature to a paper by fraud. The wife did not know the nature of the signature until months later, when she found that she had in truth signed and verified a complaint for divorce which the husband had taken before a lawyer and had a suit carried on in her name without her knowledge. The Minnesota court set aside the judgment. Of course, the facts in the case at bar are altogether different, and we cite this case merely to show an instance of when release will be granted. In 51 L.R.A.(N.S.) 534, is a note continuing the subject down to the year 1914. It is sufficient to say that of all the cases cited there is no dissent from the rule announced, unless possibly the case of Ficener v. Ficener, which we have already mentioned. At 14 Cyc. page 271, the text says: "The party in whose favor a divorce has been granted cannot ordinarily have it set aside, unless the divorce suit was instituted without the knowledge or consent of the applicant." Cases supporting this doctrine are found in the text and in the annotations.

That this is the law must have suggested itself to plaintiff's counsel, because he says in his brief: "While there are some authorities on the brief of the appellant to the effect that where there is collusion and fraud, the court will allow the parties to remain where they have each placed themselves, yet there are well-defined exceptions to this rule. When the court can say that one of the parties is more innocent than the other, or has been the vicitm of a cruel wrong, and that party has acted with reasonable diligence in undoing the wrong, then the question as to how far they may have misled the court becomes wholly immaterial, and the court is confronted with these two questions, viz., (1) Was the divorce procured in bad faith; or (2) Was it done for an ulterior purpose? And, if the latter, was that purpose to defeat the ends of public justice? In the case at bar we have tried to make it plain that Hender-

son was confronted with a charge that involved his entire future. Mrs. Henderson and the girl that subsequently became his wife were to be silenced. That silence became the basis of these proceedings. That the defendant lulled his wife into apparent security is evidenced by the fact that they left North Dakota together, went to a public hotel, and lived together as man and wife after the alleged divorce. That subsequently the defendant, in his correspondence, indicated clearly that he was holding out for the time being a false signal or hope to Mrs. Henderson. . . . Looking at the conduct of the defendant, in the first instance, we find that it is bad. His methods are dangerous to the administration of public justice. He was willing to commit a crime to save himself from conviction for a crime. He was willing to lie whenever lies would best serve his purpose. He was willing to enter into a scheme wherever a scheme would carry out a scheme. He was willing to contract a marriage in South Dakota, knowing at the time that the promise he had made to Mrs. Henderson false—lies that came from his lips. . . ."

There is nothing in the record that reflects any credit upon the husband, but that is not the issue. The wife concedes that she was willing to aid him in those unlawful purposes. That she was willing to obtain a divorce in her belief that that was necessary so that she might testify upon his behalf. She was willing to have this divorce entered and run her chances of a remarriage. Her testimony shows that she still believes the defendant was guilty of adultery at the time the decree says he was. She was aware of the nature of the step that she was taking. The divorce was not obtained by any fraud practised upon her. She went into the suit with her eyes open, relying upon the promise of defendant that he would remarry her. After he had broken his promise and had contracted another marriage, she, for the first time, attacks the decree which she herself had obtained. Under those circumstances she has no standing in a court of equity. As all of those things appeared upon her original application for relief, her application should have been denied. Certainly the motion to quash should have been allowed. The order of the trial court is reversed and the decree of divorce is ordered reinstated.